## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

PAUL PORRETTO,

      Petitioner,

v.                                                      Case No. 4:21-cv-464-MW-MJF

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Paul Porretto, proceeding *pro se*, has filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 21. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 29 (Answer); Doc. 30 (Exs.). Porretto replied. Doc. 36. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Porretto is not entitled to habeas relief.[1]

_____

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

On May 18, 2011, Deputy Beam of the Wakulla County Sheriff's Office was dispatched to the 1000 block of River Plantation Road to investigate a possible physical altercation. The complaining party was Nathan Deanda. Beam drove to the area—which was heavily wooded—and spotted Deanda waving his arms to get Beam's attention. Deanda was on foot. While Beam was conversing with Deanda, Porretto approached driving a white van with an attached trailer. Porretto was the sole occupant and registered owner of the van and trailer.

Beam made contact with Porretto and observed—in plain view from the driver-side window—numerous items that are commonly used to manufacture methamphetamine. Beam ordered Porretto out of the van and detained him. Porretto consented to a search of his van and trailer.

Investigator Giddens conducted the search of Porretto's van and trailer. Giddens was specially trained in the search and disposal of methamphetamine labs. Giddens observed that Porretto had removed the rear seats of his van to accommodate the transportation of methamphetamine-manufacturing materials.

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. *See* Doc. 30, Ex. B (Trial Tr.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

Giddens found a variety of evidence inside the van and trailer that proved Porretto was manufacturing methamphetamine, including: (1) a homemade burner between the driver and passenger seats; (2) tubing attached to bottle caps with holes in them—commonly used for making a homemade generator to use in producing methamphetamine—between the driver and passenger seats; (3) glass paraphernalia—commonly used to smoke methamphetamine—underneath the hood of the van; (4) glass tubing between the driver and passenger seats; (5) a scale in the glove compartment; (6) a large glass cylinder in the back of the van; (7) a dresser containing unknown chemicals inside the trailer; and (7) a bucket containing Coleman fuel and butane fuel inside the trailer.

Inside Porretto's van, Giddens also found "pure methamphetamine" powder in a clear glass measuring cup behind the passenger seat.[3] A sample of the powder field-tested positive for methamphetamine. Giddens weighed the pure methamphetamine powder on site. The powder weighed 2 grams. Giddens sent the pure methamphetamine powder to the Florida Department of Law Enforcement ("FDLE") for further testing and identification.

---

[3] By "pure methamphetamine," Giddens meant: "the after product which you are basically wanting to make. That's the actual product you end up smoking or using." Ex. B at 45.

Inside Porretto's trailer, Giddens also found the waste product of a recent methamphetamine cook—a liquid-solid mixture—that was still undergoing a chemical reaction inside a bottle.[4] A sample of the methamphetamine waste product field-tested positive for the presence of methamphetamine. Giddens weighed the methamphetamine waste product on site. The waste product weighed 394.8 grams. Giddens sent a sample of the methamphetamine waste product to the FDLE for further testing and identification.

Sam Catalani, a laboratory analyst with the FDLE, tested the methamphetamine powder from the clear measuring cup. The powder was pure methamphetamine. Catalani also tested the sample of the methamphetamine waste product from the bottle. The waste product was a mixture of methamphetamine and non-controlled substances.

In Wakulla County Circuit Court Case Number 11-CF-195, Porretto was charged with three crimes: (1) Trafficking in Methamphetamine, 200 Grams or More, in violation of Fla. Stat. § 893.135(1)(f) 1.c. (Count I); (2) Possession of Methamphetamine With Intent to Sell or Deliver, in violation of Fla. Stat. § 893.13(1)(a) 1. (Count II); and (3) Sale of Methamphetamine, in violation of Fla.

---

[4] By "meth waste product," Giddens meant, "after product . . . you actually have an actual waste product that you have to dispose of." Ex. B at 46.

Stat. § 893.13(1)(a) 1. (Count III). Doc. 30, Ex. A at 4-5.[5] Prior to trial, the State nolle prossed Count III.

Porretto's defense was that all of the methamphetamine, methamphetamine waste product, and manufacturing materials belonged to Deanda. The jury found Porretto guilty of Trafficking in Methamphetamine as charged with a special finding that the quantity involved was 200 grams or more. Ex. A at 6. The jury found Porretto not guilty on Count II. *Id*. at 7.

The trial court adjudicated Porretto guilty of the trafficking charge and sentenced him to a 15-year mandatory minimum term of imprisonment. Ex. A at 8-19. On October 24, 2014, the Florida First District Court of Appeal ("First DCA") affirmed the judgment and sentence *per curiam* without written opinion. *Porretto v. State*, No. 1D13-4986, 150 So. 3d 1139 (Fla. 1st DCA 2014) (Table) (copy at Ex. E).

On March 18, 2015, Porretto filed a *pro se* petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel. Ex. F. On April 14, 2015, the First DCA denied the petition on the merits. *Porretto v. State*, No. 1D15-1362, 218 So. 3d 893 (Fla. 1st DCA 2015) (per curiam) (copy at Ex. G).

---

[5] Hereafter, all citations to the state-court record are to the lettered exhibits filed at Doc. 30.

On May 18, 2015, Porretto filed in the state circuit court a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he twice amended. Ex. K (Orig. Mot.); Ex. O (Am. Mot.); Ex. Q at 11-43 (Second Am. Mot.). On October 8, 2018, the circuit court summarily denied relief. Ex. Q at 122-324. The First DCA affirmed without written opinion. *Porretto v. State*, No. 1D19-2236, 312 So. 3d 857 (Fla. 1st DCA 2020) (Table) (per curiam) (copy at Ex. AA). The mandate issued March 16, 2021. Ex. AA.

Porretto filed his *pro se* federal habeas petition on November 17, 2021. Doc. 1. Porretto's second amended petition raises four claims. Doc. 21. The State asserts that Porretto is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 29.

## II. SECTION 2254 STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13 (O'Connor, J., concurring). In applying the "unreasonable application" clause, the federal court defers to the state court's reasoning unless the state court's application of the governing legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court warned that, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

---

[6] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause of § 2254(d)(1), the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under

§ 2254(d) is "difficult to meet, . . .  because it was meant to be." *Richter*, 562 U.S.

at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a

petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See*

*Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, however, the writ will

not issue unless the petitioner shows that he is in custody "in violation of the

Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

### III.    DISCUSSION

**Ground One**     **"The State Court Violated Petitioner's Constitutional Right To Effective Assistance Of Counsel In Denying Ground One Of The Motion For Postconviction Relief By Finding That Petitioner Did Not Demonstrate Deficient Performance Or Prejudice." Doc. 21 at 10 in ECF.**

Porretto claims that his trial counsel was ineffective for failing to adequately argue in his motion for judgment of acquittal that the State's evidence was insufficient to prove that (1) Porretto possessed the methamphetamine, and (2) Porretto possessed a trafficking amount of more than 200 grams of methamphetamine. Doc. 21 at 23-27, 33-38 in ECF. The State responds that Porretto is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 29 at 26-37.

### A.    *The State Court's Decision*

Porretto presented this claim to the state courts as "Ground I" of his second amended Rule 3.850 motion. Ex. Q at 14-19. The state circuit court identified *Strickland v. Washington*, 466 U.S. 668 (1984), as the controlling legal standard. Ex. Q at 122. The court denied relief for these reasons:

> Defendant alleges that counsel was ineffective for failing to raise an adequate motion for judgment of acquittal. Defendant's claim is facially insufficient. *See White v. State*, 977 So. 2d 680 (Fla. 1st DCA 2008) (*citing Nelson v. State*, 854 So. 2d 666, 670 (Fla. 2nd DCA 2003)). Even if Defendant's claim was not facially insufficient it is refuted by the record.

Page 10 of 33

> Trial counsel moved for a judgment of acquittal based on the State's inability to elicit a prima facie case establishing that Defendant had either actual or constructive possession of the items that were placed in evidence. *Exh. 1 – Jury Trial Transcript, pp. 78-79*. However, the trial court denied the defense's motion for judgment of acquittal based on the evidence presented at trial. *Id*. Defendant has not demonstrated deficient performance or prejudice. Ground One is denied.
>
> .

Ex. Q at 123. The First DCA summarily affirmed without explanation. Ex. AA. The First DCA's summary affirmance is an "adjudication on the merits" of Porretto's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100.

## B.   *Clearly Established Federal Law*

The clearly established Federal law governing claims of ineffective assistance of counsel is the two-pronged *Strickland* test. *See Strickland*, 466 U.S. at 687. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *Id.* at 687.

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689.

Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). As a consequence of this burden, "when the evidence is unclear . . ., [courts] presume counsel performed reasonably and exercised reasonable professional judgment." *Blankenship v. Hall*, 542 F.3d 1253, 1274 (11th Cir. 2008) (citations omitted).

*Strickland*'s second prong requires a defendant to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable

probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained in *Richter*:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

562 U.S. at 105 (citations omitted).

### C.    *Porretto Is Not Entitled to Habeas Relief*

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018).

The state court's decision was not "contrary to" clearly established Federal law, because the state court applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Porretto must show that the state court's application of the *Strickland* standard was unreasonable, or that its decision was based on an unreasonable determination of the facts. Porretto fails to make that showing.

The trial transcript confirms that defense counsel moved for a judgment of acquittal on the ground that the State's evidence was insufficient "to establish that Paul Porretto had either actual or constructive possession" of the evidence seized from his van and trailer. Ex. B at 78. The trial court denied the motion. *Id*. at 78-79.

Defense counsel renewed the motion at the close of all the evidence. *Id*. at 109. The trial court denied the motion. *Id*.

The trial transcript also confirms that the State's witnesses testified that (1) Porretto was the sole occupant—and had exclusive possession of—the van and its attached trailer in which the methamphetamine and methamphetamine mixture were found; (2) Porretto was the sole owner of the van and trailer; (3) the pure methamphetamine and several of the methamphetamine-manufacturing materials were within plain view and in arm's reach of Porretto; (4) Porretto had modified the back-seat area of his van to accommodate the transportation of methamphetamine-manufacturing materials; and (5) Porretto became agitated and nervous when Beam asked him to step out of the van. *See* Ex. B at 21-26.

Because the State presented sufficient evidence to prove that Porretto knowingly possessed the methamphetamine and mixture containing methamphetamine, a fairminded jurist could concur in the state court's conclusion that Porretto failed to establish that counsel was ineffective for failing to make the more particular argument concerning possession that Porretto proposes. *See* Fla. Stat. § 893.135(1)(f) 1.; *State v. Odom*, 862 So. 2d 56 (Fla. 2d DCA 2003) (discussing the requirements for proving possession under Florida law); *Lee v. State*, 835 So. 2d 1177, 1179-80 (Fla. 4th DCA 2002) (same); *see also Rios v. Sec'y, Dep't*

*of Corr.*, 460 F. App'x 831, 833 (11th Cir. 2012) (state court reasonably applied *Strickland* when it rejected ineffective-assistance claim grounded in counsel's failure to move for judgment of acquittal, where the State presented sufficient evidence that the petitioner committed the charged offense (citing *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008))).

"[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017); *see also Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a meritless claim."); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit."); *Lamontagne v. Sec'y, Dep't of Corr.*, 433 F. App'x 746, 750 (11th Cir. 2011) (state court reasonably applied *Strickland* when it rejected ineffective-assistance claim grounded in counsel's failure to file a motion that "would almost certainly have failed").

Concerning Porretto's allegation that counsel was ineffective for failing to argue that there was insufficient evidence of the requisite weight of methamphetamine to support the trafficking charge, the First DCA reasonably could have rejected that aspect of Porretto's claim because Porretto's proposed argument

for acquittal was meritless.[7] Porretto asserts that trial counsel should have argued that the mixture of 394.8 grams of "meth waste" could not be used to establish a trafficking quantity of 200 grams or more of methamphetamine. Doc. 21 at 25-27, 35-38. In support of this assertion, Porretto relies on *federal cases* construing *federal statutes* that, Porretto maintains, have "all unequivocally held that the total weight of toxic, unusable liquid meth oil is not to be aggregated for sentencing purposes." Doc. 21 at 36-37. Federal cases construing federal statutes are inapposite.

Whether the mixture of 394.8 grams of "meth waste" that tested positive for methamphetamine could be used to establish a conviction under *Florida state law* for a trafficking amount of 200 grams or more, is controlled by state law. The statute under which Porretto was charged, Fla. Stat. § 893.135, provides in relevant part:

> (f) 1. Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 14 grams or more of amphetamine, as

---

[7] The state circuit court did not explain its reasoning for rejecting this aspect of Porretto's claim, and the First DCA affirmed the denial of postconviction relief without explanation. Section 2254(d)'s deferential standard still applies. *See Pinholster*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial." (citing *Richter*, 562 U.S. at 98)). In these circumstances, Porretto "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for [the First DCA's] decision." *Pinholster*, 563 U.S. at 188 (quoting *Richter*, 562 U.S. at 98). The duty of the federal habeas court is to "determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102.

described in s. 893.03(2)(c) 2., or methamphetamine, as described in s. 893.03(2)(c) 5., **or of any mixture containing** amphetamine or **methamphetamine**, or phenylacetone, phenylacetic acid, pseudoephedrine, or ephedrine **in conjunction with other chemicals and equipment utilized in the manufacture of amphetamine or methamphetamine**, commits a felony of the first degree, which felony shall be known as "trafficking in amphetamine," punishable as provided in s. 775.082, s. 775.083, or s. 775.084. If the quantity involved:

. . . .

c. Is 200 grams or more, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and pay a fine of $250,000.

Fla. Stat. § 893.135(1)(f) 1.c. (2011) (bold added).

Under Florida law, "'[m]ixture' means any physical combination of two or more substances, including, but not limited to, a blend, an aggregation, a suspension, an emulsion, a solution, or a dosage unit, **whether or not such combination can be separated into its components by physical means, whether mechanical or thermal**." Fla. Stat. § 893.02(16) (2011) (bold added). Still further, Florida law provides that:

**A mixture, as defined in s. 893.02**, **containing any controlled substance described in this section includes**, but is not limited to, **a solution** or a dosage unit, including but not limited to, a gelatin capsule, pill, or tablet, **containing a controlled substance**. For the purpose of clarifying legislative intent regarding the weighing of a mixture containing a controlled substance described in this section, **the weight of the controlled substance is the total weight of the mixture, including the controlled substance and any other substance in the**

**mixture.** If there is more than one mixture containing the same controlled substance, the weight of the controlled substance is calculated by aggregating the total weight of each mixture.

Fla. Stat. § 893.135(6) (2011) (bold added).

The whole of Porretto's argument was soundly rejected by the First DCA in

*Wilder v. State*, 194 So. 3d 1050 (Fla. 1st DCA 2016), where the court held:

> In this case, the liquid found in the glass vase was a "mixture" of methamphetamine because it contained methamphetamine in addition to the waste by-product from the manufacturing process. Accordingly, based on the plain language of sections 893.135(1)(f) 1. and 893.135(6), the jury was properly instructed on and allowed to consider the liquid by-product in determining whether Wilder was guilty of the trafficking offense,FN5 and because the combined weight of all of the liquid and other methamphetamine found at the scene exceeded the statutory weight threshold for a trafficking offense, Wilder was properly convicted of that offense.

> > [FN]5 This conclusion is not undermined by the methamphetamine cases relied on by Wilder arising under the federal counterpart to section 893.135. First and foremost, the federal statutes discussed in those cases differ from the applicable Florida statute in a significant respect because the federal statutes do not contain language similar to that in section 893.135(6) specifying how the weight of a mixture containing a controlled substance is to be calculated.

*Wilder*, 194 So. 3d at 1054-1055; *see also Seckington v. Sec'y, Dep't of Corr.*, No.

6:19-cv-713-Orl-31EJK, 2020 WL 10934940, at *7 (M.D. Fla. Sept. 10, 2020)

("Pursuant to the unambiguous language of § 893.135(6), Florida Statutes, counsel

had no basis to challenge the quantity of the methamphetamine attributed to

Page 19 of 33

Petitioner or the methodology by which Andreu tested and weighed the liquids."
(citing *Wilder, supra*)); *Thurber v. Jones*, No. 3:15-cv-398/MCR/EMT, 2017 WL
990584, at *14 (N.D. Fla. Jan. 24, 2017), *report and recommendation adopted*, 2017
WL 989258 (N.D. Fla. Mar. 13, 2017).

Because Porretto's proposed argument for acquittal was meritless, the First
DCA reasonably rejected Porretto's ineffective-assistance claim. "[I]t is axiomatic
that the failure to raise nonmeritorious issues does not constitute ineffective
assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994); *see also*
*Pinkney*, 876 F.3d at 1297; *Brownlee*, 306 F.3d at 1066.

The First DCA's rejection of Porretto's claim was not contrary to, and did not
involve an unreasonable application of, the *Strickland* standard. Nor was the
decision based on an unreasonable determination of the facts. Porretto is not entitled
to habeas relief on Ground One.

**Ground Two**     **"The State Court Violated Petitioner's Constitutional Right
To Effective Assistance Of Trial Counsel In Denying Ground
Three Of The Motion For Postconviction Relief By Finding
Petitioner's Claim Is Refuted By The Record, And That
Defendant Did Not Demonstrate Deficient Performance Or
Prejudice." Doc. 21 at 12 in ECF.**

Porretto claims that his trial counsel was ineffective for failing to move to
dismiss the trafficking charge because, "as evidence[d] by the prosecution's own
evidence, there was only 4.7 grams of a final methamphetamine product to have

Page 20 of 33

been admitted into evidence and proven to have been possessed by Petitioner." Doc. 21 at 27 in ECF; *Id.* at 28-29, 38-39 in ECF. Again, relying on federal cases construing federal law, Porretto contends—as he did in Ground One—that the mixture of 394.8 grams of "meth waste" that contained only a small amount of pure methamphetamine could not be used to establish a trafficking amount of 200 grams or more. *Id*. The State responds that Porretto is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 29 at 37-43.

## A.    *The State Court's Decision*

Porretto presented this claim to the state courts as "Ground III" of his second amended Rule 3.850 motion. Ex. Q at 20-22. The state circuit court identified *Strickland* as the controlling legal standard, Ex. Q at 122, and denied relief as follows:

> Defendant alleges that counsel was ineffective for failing to file a motion to dismiss the trafficking in methamphetamine before trial being that counsel knew the State lacked evidence to prove the weight element. Defendant's claim is refuted by the record as evidence proving the weight of methamphetamine seized from the Defendant's vehicle was offered at trial. According to testimony by Sam Catalani, an expert chemist with FDLE, he tested samples of the substances seized from the Defendant's vehicle. *Exh. 1 – Jury Trial Transcript, p. 71-77*. Mr. Catalani identified the substances as containing methamphetamine. *Id*. Defendant's counsel cannot be held ineffective for failing to file a meritless motion. Defendant has not demonstrated deficient performance or prejudice. Ground Three is denied.

Ex. Q at 123-24. The First DCA summarily affirmed without explanation. Ex. AA. The First DCA's summary affirmance is an "adjudication on the merits" of Porretto's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100.

### B.    *Clearly Established Federal Law*

The clearly established Federal law governing claims of ineffective assistance of counsel is the two-pronged *Strickland* standard, articulated above.

### C.    *Porretto Is Not Entitled to Habeas Relief*

Consistent with *Wilson*, this court presumes that the First DCA rejected Porretto's claim for the reasons provided by the state circuit court. The state court's decision was not "contrary to" clearly established Federal law, because the state court applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Porretto must show that the state court's application of the *Strickland* standard was unreasonable. Porretto fails to make that showing.

Porretto's underlying theory of this ineffective-assistance claim rests on the assumption that he had a viable motion to dismiss the trafficking charge for lack of evidence of the required quantity for trafficking. Porretto reasons that only the weight of the pure methamphetamine and the pure-methamphetamine-portion of the

waste product could be used to calculate the weight. As explained earlier, however, Porretto's assumption is faulty. *See* discussion *supra* Ground One. Because Porretto's assumption is faulty and his proposed motion to dismiss certainly would have failed, the state court reasonably concluded that counsel was not ineffective for failing to make it. *Pinkney*, 876 F.3d at 1297; *Freeman*, 536 F.3d at 1233; *Bolender*, 16 F.3d at 1573. Porretto is not entitled to habeas relief on Ground Two.

| | |
|---|---|
| **Ground Three** | **"The State Court Violated Petitioner's Constitutional Right To Effective Assistance Of Trial Counsel In Denying Ground Nine Of The Motion For Postconviction Relief By Finding That Defendant Did Not Demonstrate Deficient Performance Or Prejudice." Doc. 21 at 14 in ECF.** |

Porretto claims that his trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of possession of methamphetamine. Doc. 21 at 29-30, 39-40 in ECF. Porretto asserts that had the jury been instructed on the offense of "simple possession," he would have been convicted of the lesser offense because, as he alleged in Grounds One and Two, *supra*, the State failed to prove that he had a trafficking amount of methamphetamine. *Id*. The State responds that Porretto is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 29 at 43-50.

### A. *The State Court's Decision*

Porretto presented this claim to the state courts as "Ground IX" of his second amended Rule 3.850 motion. Ex. Q at 20-22. The state circuit court identified *Strickland* as the controlling legal standard, Ex. Q at 122, and denied relief as follows:

> Defendant alleges that counsel was ineffective for failing to request a lesser included offense. Defendant's claim is facially insufficient. A claim of ineffective assistance based on counsel's failure to request a lesser included offense does not create a reasonable probability that the jury would have found the defendant guilty of the lesser included offense had the instruction been given. *Sanders v. State*, 847 So. 2d 504 (Fla. 1st DCA 2003). Defendant has not demonstrated deficient performance or prejudice. Ground Nine is denied.

Ex. Q at 125. The First DCA summarily affirmed without explanation. Ex. AA. The First DCA's summary affirmance is an "adjudication on the merits" of Porretto's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100.

### B. *Clearly Established Federal Law*

The clearly established Federal law governing claims of ineffective assistance of counsel is the two-pronged *Strickland* standard, articulated above.

### C. *Porretto Is Not Entitled to Habeas Relief*

Consistent with *Wilson*, this court presumes that the First DCA rejected Porretto's claim for the reasons provided by the state circuit court. Because the state

court applied the two-part *Strickland* standard, the state court's decision was not "contrary to" clearly established Federal law. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Porretto must show that the state court's application of the *Strickland* standard was unreasonable. Porretto fails to make that showing.

The state court reasonably concluded that Porretto failed to establish prejudice under *Strickland*. The opinion on which the state circuit court relied for its prejudice analysis—*Sanders v. State*, 847 So. 2d 504 (Fla. 1st DCA 2003)—was affirmed by the Florida Supreme Court in *Sanders v. State*, 946 So. 2d 953 (Fla. 2006) ("*Sanders II*"). In *Sanders II*, the Florida Supreme Court held that when a defendant has been convicted of a criminal offense but claims that counsel was ineffective for failing to request an instruction on a lesser-included offense, the defendant "cannot, as a matter of law, demonstrate prejudice [under *Strickland*] by relying on the possibility of a jury pardon, which by definition assumes that the jury would have disregarded the law, the trial court's instructions, and the evidence presented." *Sanders II*, 946 So. 2d at 956.

The court in *Sanders II* explained that a jury pardon "allows the jury to acquit a defendant of a greater offense and convict him or her of a lesser one even though the evidence supports both crimes." 946 So. 2d at 957-58. "By definition," then,

"jury pardons violate the oath jurors must take before trial, as well as the instructions the trial court gives them." *Id*. at 958. These instructions require a jury to "render a true verdict according to the law and the evidence" and to convict of a lesser-included offense "only if it decides that the main accusation has not been proved beyond a reasonable doubt." *Id*. at 958.

"When a jury convicts a defendant of a criminal offense, it has decided that the evidence demonstrated beyond a reasonable doubt that the defendant committed the crime charged." *Id*. at 958. "To assume that, given the choice, the jury would now *acquit* the defendant of the same crime of which it convicted him, and instead convict of a lesser offense, is to assume that the jury would disregard its oath and the trial court's instructions." *Id*. at 958. In other words, "any finding of prejudice resulting from defense counsel's failure to request an instruction on lesser-included offenses necessarily would be based on a faulty premise: that a reasonable probability exists that, if given the choice, a jury would violate its oath, disregard the law, and ignore the trial court's instructions." *Id*. at 959. Because, as *Strickland* instructs, a defendant has no entitlement to "the luck of a lawless decisionmaker," *Strickland*, 466 U.S. at 695, the possibility of a jury pardon—which does not call into question the jury's determination that the defendant was guilty beyond a

reasonable doubt of the crime charged—"cannot form the basis for a finding of prejudice." *Sanders II* at 960.

The Eleventh Circuit has concluded that a state court's reliance on *Sanders II* to deny an ineffective-assistance claim like the one Porretto asserts here, is not an unreasonable application of *Strickland*. *See Crapser v. Sec'y, Dep't of Corr*., 855 F. App'x 626, 627-29 (11th Cir. 2021); *Torres v. Sec'y, Dep't of Corr*., No. 16-17325-E, 2017 WL 5997387 at *7 (11th Cir. June 2, 2017); *Santiago v. Sec'y, Fla. Dep't of Corr*., 472 F. App'x 888, 889 (11th Cir. 2012); *Magnotti v. Sec'y for Dep't of Corr*., 222 F. App'x 934, 939-40 (11th Cir. 2007).

The jury in Porretto's case concluded that the evidence against him supported his conviction for the trafficking offense on which it was instructed.[8] Because the jury determined that Porretto was guilty beyond a reasonable doubt of the greater offense, it would not have been permitted to convict Porretto of a lesser-offense even if a lesser-offense instruction had been given. *See Sanders*, 946 So. 2d at 958; *Strickland*, 466 U.S. at 694 (explaining that a reviewing court should presume that the jury acted according to law). The possibility that the jury would have violated its oath, disregarded the law, and ignored the trial court's instructions by relying on a

---

[8] If the jury believed that Porretto was *not guilty* of that offense, it was required to acquit him.

lesser-included offense to provide a jury pardon is not a basis for finding prejudice under *Strickland*, as the state court reasonably concluded.

The First DCA's rejection of Porretto's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Porretto is not entitled to habeas relief on Ground Three.

| | |
|---|---|
| **<u>Ground Four</u>** | **<u>"The State Trial And Appellate Courts Both Denied Petitioner His Right To Effective Assistance Of Counsel In Denying Ground Seven Of Petitioner's Motion For Postconviction Relief By Finding That There Wasn't Deficient Performance Or Prejudice Established As To Any Of Petitioner's Claims." Doc. 21 at 16 in ECF.</u>** |

Porretto's final claim is "based on a cumulative error analysis" of counsel's alleged errors detailed in Grounds One through Three above. Doc. 21 at 30 in ECF; *Id*. at 31-32, 40-41 in ECF. The State asserts that Porretto is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. Doc. 29 at 50-56.

**A.    *The State Court's Decision***

Porretto presented this claim to the state courts as "Ground VII" of his second amended Rule 3.850 motion. Ex. Q at 25-29. The state circuit court denied relief as follows:

> Defendant alleges that he is entitled to relief because of the cumulative effect of trial counsel's alleged deficient performance. Because there was no deficient performance or prejudice, Ground Seven is denied.

Ex. Q at 125. The First DCA summarily affirmed without explanation. Ex. AA. The First DCA's summary affirmance is an "adjudication on the merits" of Porretto's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100.

**B.    *Porretto Is Not Entitled to Habeas Relief***

The Eleventh Circuit has questioned whether a claim of cumulative error ever can provide a basis for federal habeas relief. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 & n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law."). Although the Supreme Court has not addressed the applicability of the cumulative-error doctrine in the context of ineffective-assistance claims, the Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (citations omitted).

Porretto has not shown that the alleged errors of trial counsel discussed above undermine the reliability of the jury's finding of guilt. In light of *Cronic* and the

absence of Supreme Court precedent applying the cumulative-error doctrine to claims of ineffective assistance of counsel, the state court's rejection of Porretto's claim was neither contrary to, nor an unreasonable application of, clearly established Federal law. Porretto is not entitled to habeas relief on Ground Four.

## IV.   PORRETTO IS NOT ENTITLED TO AN EVIDENTIARY HEARING

Porretto's reply asserts that the District Court should conduct an evidentiary hearing on his claims. Doc. 36 at 5-11. "[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers v. Warden, Att'y. Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015); *see also Pinholster*, 563 U.S. at 185 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").

If the petitioner does not overcome 2254(d), federal habeas relief should be denied and, correspondingly, he is not entitled to an evidentiary hearing. *Pinholster*, 563 U.S. at 183; *see also Landrigan*, 550 U.S. at 474 (noting that when the state-court record "precludes habeas relief" under the limitations of § 2254(d), a district court is "not required to hold an evidentiary hearing."); *Gaines v. Chairman, Fla.*

Page 30 of 33

*Parole Comm'n*, 745 F. App'x 871, 875 (11th Cir. 2018) ("When a state court has adjudicated the claim presented by the petitioner, an evidentiary hearing may only be granted if the federal court concludes that the state court unreasonably applied clearly established federal law or made an unreasonable determination of fact.").

Because Porretto's claims were subject to review under 28 U.S.C. § 2254(d), and because Porretto failed to overcome that demanding standard, he is not entitled to an evidentiary hearing and this court could not consider any new evidence adduced at such a hearing. *Landers*, 776 F.3d at 1294-95; *Pinholster*, 563 U.S. at 181 ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *Shoop v. Twyford*, 596 U.S. ___, 142 S. Ct. 2037, 2043 (2022) ("Review of factual determinations under § 2254(d)(2) is expressly limited to 'the evidence presented in the State court proceeding.'").

## V.  A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

Page 32 of 33

1. The second amended petition for writ of habeas corpus, Doc. 21, challenging the judgment of conviction and sentence in *State of Florida v. Paul Porretto*, Wakulla County Circuit Court Case No. 11-CF-195, be **DENIED**.

2. Petitioner's request for an evidentiary hearing, Doc. 36, be **DENIED**.

3. The District Court **DENY** a certificate of appealability.

4. The clerk of court close this case file.

At Pensacola, Florida, this <u>21st</u> day of April, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**